## Tolkach v. Kibelbek et al.

*Stahlman & Carson*, for plaintiff.

*F. J. Docktor*, for defendants.

GIBSON, P. J., April 19, 1948.—Plaintiff filed his bill alleging he had purchased from defendants their business and goodwill in the Borough of Bentleyville, and that, as an inducement to the purchase thereof, defendants had agreed that they would not enter into the retail food business in any manner whatsoever in that locality or within a 10-mile radius of Bentleyville within a period of five years, averring that defendants had entered into the retail food business in the prohibited area, and prayed for equitable relief, for compensation, and for general relief.

Defendants filed their answer, admitting the execution of the paper in question, but denying that they had entered into the retail food business within the prohibited area. A trial was held and testimony taken.

From the record and the testimony taken, we find the following

### Facts

1. For a number of years defendants, as partners trading under the name of "Kibelbek Bros. Store", carried on business in a rented property on East Main Street in the Borough of Bentleyville.

2. For several months prior to May 4, 1945, the two defendants entered into negotiations with plaintiff for the sale of their stock, merchandise, goodwill, fixtures, and all other assets of the business known as "Kibelbek Bros. Store", situate on East Main Street, in the Borough of Bentleyville.

3. As a part of these negotiations there was executed on or shortly after April 23, 1945, the following writing:

"April 23, 1945.

"Mr. Michael Tolkach
Charleroi, Pa.
Dear Sir:

"Complying with your request and in accordance with our understanding it is mutually agreed I will not enter the Retail food business in any manner whatsoever in this locality or within a ten mile radius of Bentleyville, Pa., within a period of 5 years, directly or indirectly.

Steve Kibelbek<br>Joseph Kibelbek

"Frank Wilson
    witness"

4. On April 23, 1945, the terms of the agreement to purchase had been fixed orally, and on that date plaintiff made a down payment of $50 on the purchase price.

5. At a later date there was executed and delivered to plaintiff a bill of sale under date of May 4, 1945, wherein, for a total consideration of $11,039.21, receipt of which was acknowledged, defendants granted, bargained, sold, released and confirmed unto the plaintiff, "all and singular the stock, merchandise, goodwill, fixtures and all other assets of the business known as 'Kibelbek Bros. Store', situate on East Main Street, in the Borough of Bentleyville", with an agreement that possession was to be delivered on May 4, 1945, to which was attached a list of the fixtures, and the final payment was made for all the property transferred.

6. Thereafter plaintiff entered into the management, possession and control of the said store and business and continued to operate the same to the time of trial.

7. Prior to the time of such sale, as a part of the business Kibelbek Bros. Store operated a substantial business in meats as a part of its general business, and each of defendants was a meat cutter of experience and was well acquainted with the trade in that vicinity.

8. Immediately after the transfer of property on May 4, 1945, Joseph Kibelbek, one of defendants, entered into the employ of plaintiff and continued in such employment until the latter part of September or the month of October 1946.

9. About March 22, 1946, there was conveyed by Robert J. Patterson et ux. to Steve Kibelbek and Katherine Kibelbek, his wife, a certain property situate on Washington Street, or Avenue, in the Borough of Bentleyville, being about 100 feet distant from the store which the two defendants had sold to plaintiff. This property contained a two-story building suitable for a storeroom.

10. During the summer of 1946 a remodeling and improvement of this property was begun and carried on and was so far completed that in November of 1946 Michael Kibelbek, a brother of defendants, as the apparent owner and proprietor, opened a store wherein he engaged in the sale of groceries, meats, and the general retail food business, and has continued to carry on such business up to the time of trial.

11. Shortly before the opening of this store operated under the name of Michael Kibelbek, Joseph Kibelbek discontinued his employment with plaintiff and went to work in the store opened under the name of Michael Kibelbek.

12. Immediately upon opening of the business under the name of Michael Kibelbek, Steve Kibelbek was engaged at work therein and both of defendants con-

tinued to work there up to the time of the trial, being actively engaged particularly as meat cutters and salesmen, and generally about the carrying on of the business.

13. The store was equipped and the required capital was supplied by Michael Kibelbek from his own funds and from those which he borrowed from his father, Anthony V. Kibelbek, and neither of defendants had any funds invested in the equipment or business.

14. Michael Kibelbek rented the storeroom on the first floor of the building from Steve Kibelbek and his wife Katherine.

15. Michael Kibelbek paid each of defendants wages at the rate of $50 per week and a bonus of $20 once a year for their services in the store in the carrying on of the business.

16. After the store was opened and business was being carried on therein in the Washington Street store, certain customers of plaintiff transferred their business to the new store operated under the management of Michael Kibelbek and that trade was lost to plaintiff.

### Discussion

The contract of defendants is in partial restraint of trade. Each of them bargained that he would "not enter the Retail food business in any manner whatsoever" within a limited area and for a limited period. It does not appear that the period of five years is unreasonable or that the area, namely, within 10 miles of the Borough of Bentleyville, is an unreasonable area for the protection of the purchaser, and contracts within such area for such limited time have many times been held to be good and valid contracts, their necessity for the protection of the purchaser in the business which he is purchasing being recognized.

It is said, however, by defendants that there was no valuable consideration. We cannot agree with this view. In the particular agreement, Exhibit A, there

is no consideration stated. However, Exhibit A must be read with the bill of sale designated as Exhibit F, in which the business, equipment and merchandise, goodwill and fixtures are all included in one consideration and goodwill is a part of the entire transaction. It, therefore, became the right of the plaintiff to have that good will protected, and we hold there was a valuable consideration.

It is not material that it be shown that the consideration was adequate. That was a matter for the parties and they have determined the sufficiency of the value by their contract. We cannot, therefore, enter into the question regarding its sufficiency: Pittsburgh Stove & Range Co. v. Pennsylvania Stove Co., 208 Pa. 37.

It is also urged on behalf of defendants that they have not entered into the retail food business and, therefore, have not violated their agreement. This brings us to the meat of the case. The usual contract we find in books is that the seller "shall not engage, directly or indirectly, in the business" of the same nature as that being sold within a designated time and place, and under a contract so drawn it has been held that even employment by a party to the contract in the advancement of a competing business within the limited time or area is a violation of the contract and will be restrained: Pittsburgh Stove & Range Co. v. Pennsylvania Stove Co., supra; Langberg et al. v. Wagner, 101 N. J. Eq. 383, 139 Atl. 518; Crossfield v. Lokey, 212 Ala. 560, 103 So. 649, and many other cases of the same purport. In the last case above cited, the word "engaged" is defined as a broad term covering serving or working for another whether as manager or subordinate.

The difficulty with this case is that the parties did not employ the usual terms of this type of contract but resorted to the expression "I will not enter the Retail food business in any manner whatsoever". We

think there is a distinction between the broad term "engage in the business" as defined above and the expression here "I will not enter". "Enter" means to form a constituent part of, to become a part or partaker of, or to share in a business: 14 Words & Phrases 651. Thus the term "enter a business" indicates that the person partakes of it, has a share in it, or is a constituent part of the control and management as distinguished from an employe.

We have found but one Pennsylvania case which deals with this term. In Schutte v. Kibler, 55 Pa. Superior Ct. 199, it was held that a rule of a lodge which provided that any member of the order who enters into the business of selling by retail intoxicating liquors as a beverage shall be expelled from the order, prevented one who secured a liquor license and engaged in the liquor business after the adoption of this rule from being a beneficial member of the order. This case clearly indicates that the court considered that one who purchased a business and acquired a license to operate it "entered into the business".

We do not find that the terms used by the parties have any particular trade meaning. We, therefore, must take the contract as the parties have written it and apply the commonly understood meanings to the words they have used. We do not believe that the language "I will not enter the Retail food business" is broad enough to justify restraining defendants from being employed in a place where the retail food business is carried on.

We have found that defendants were employes of Michael Kibelbek for the sole reason that there is nothing in this record which proves otherwise. The circumstances surrounding the opening of the new business on Washington Street were certainly sufficient to arouse plaintiff's suspicion that defendants had entered into the business. While this contract was in force and within the prohibited area, one of defendants bought the property in which this new business

was opened. Remodeling was shortly thereafter begun preparatory to opening a store. Defendants, who had been engaged in that business for a number of years, and to all appearances had sufficient capital including that which they received from plaintiff, and who had the experience and ability and the opportunity to engage in this business except for their contract prohibiting them, claim that they did not do so but their younger brother with limited capital rented the storeroom and employed them to work for him. These circumstances have all the appearances of a subterfuge to avoid the enforcement of the contract which defendants had executed; but findings of fact must be based on a record, and in the absence of any proof otherwise, we have found that defendants were employes.

The conduct of defendants was such that plaintiff was apparently justified in bringing this suit to restrain them from engaging in the prohibited business, and we think we should properly impose a part of the costs on them.

### Conclusions of law

1. Parties plaintiff and defendant entered into a valid contract whereby the goods, including the good will of defendants, were sold by defendants to plaintiff for an adequate consideration.

2. Defendants, by acting as employes in a place where the retail food business is carried on within the prohibited area of 10 miles of the Borough of Bentleyville, and within the period of five years from April 23, 1945, have not breached their contract to "not enter the Retail food business in any manner whatsoever" within the area or the time limited.

3. A final decree shall be entered by the prothonotary as follows:

And now, April 19, 1948, upon consideration of the foregoing case, it is ordered, adjudged and decreed that plaintiff's bill be dismissed and that the costs of this proceeding be divided into three equal parts,

108

one third thereof to be paid by plaintiff, and one third thereof by each defendant.

*Order*

And now, April 19, 1948, it is ordered that the foregoing adjudication be filed and notice of its filing be given by the prothonotary to counsel appearing of record for the respective parties, and that, if no exceptions be filed within 10 days after such notice, the decree set forth in the third conclusion of law shall be entered.